We'll begin with the case of Uniformed Fire Officers v. DeBlasio. Counsel has been announced, but I don't think Judge Jacobs was here at the time. So, Mr. Coles, you'll be speaking first. You reserve three minutes for rebuttal. Yes, Your Honor. Thank you very much. May I start? Yes, please. May it please the Court, and good morning, Your Honors. I represent the 65,000 law enforcement officers of the City of New York. And on this motion, we are asking for a short extension of the stay entered by Judge Chin to allow a careful consideration of the issues presented on our appeal, which arise from the City's expressed intent to publish and promote on the Internet thousands of unsubstantiated, unproven, and non-final allegations against our officers, including many retired officers. The appeal centers on the fact that our clients have rights that were not simply washed out of existence with the repeal of 50A, and they exist independently and separately from 50A. Without a stay, these documents will all be mass-produced on the Internet. The essence of our appeal will be made hollow, and we will have immediate irreparable injury. Mr. Coles, excuse me, I have only really one question to ask you the whole time, so I'll ask it now, because it's relevant to what you just said. And the question is, hasn't that irreparable injury already happened? Over the weekend, while I was preparing for reading your papers and so on, I went to the New York Civil Liberties Union website, which is mentioned in the papers, and I found exactly the information that you say, with whatever justice, and I'm not arguing about it, that this would be harmful to your clients. And it's there. And I put in the name of an officer I know, and found a whole bunch of unsubstantiated complaints against that individual. And it's there. The cat is not only out of the bag, it's running the streets. So what exactly is the irreparable injury that's going to happen, in addition, between now and whenever a presumably expedited, if you'd like that, appeal is going to be heard? That actually is a terrific question. And yes, Your Honor, we would like an expedited appeal. But the truth is, the Civil Liberties Union disclosure from the CCRB is simply a small part of all of the records that the city is intending to release. Those records, in our view, in real time, are creating damage to our clients. The examples have already begun to percolate, because this is all happening, essentially, simultaneous with our argument before you, is on the issue of safety, which is where I'd like to start. Is Your Honors know from our papers that at the time the repeal of 50A was passed in Albany, an advocate said that, now, name a cop, I'll find their address and phone and relatives. Yes, but Mr. Coles, I understand that. I understand why you think that this publication is dangerous. I get that. But the publication has happened. That's my question. I know where that person lives, because I know that person. I plugged the officer's name into the NYCLU website, and I found exactly the information that you are complaining will cause harm if it is released. And my question again is, it's already been released. Now, you started by saying, this is only a small portion of the records. So are you saying that the city is going to release more data that is not part of the CCRB? Is that what the problem is? Yeah, it is a significant problem, is the way the city has articulated what they're going to release, what the CCRB released was just a small part. The department is planning or intending to release unsubstantiated charges and specifications about officers. It's intending to release complaint reports. None of these types of documents, which have much more information than the CCRB release, have been released so far. And they were stayed by Justice Chin's action. I just need to know what we're talking about. Are these additional records from the CCRB? Are these internal affairs records? Are these police department records? Just what is it that you're talking about that is not out there that is going to be out there? That's all I want to know. Okay, so start with the police department. Is the police department records that have not been produced, that are an issue over here, include, and there's an affidavit from the police witness over here, include all pending charges and specifications issued by the police department. So departmental charges, cases that are under adjudication internally. They are pending cases that are non-final cases. The department is also going to release other types of documents in association, apparently, with these charges and specifications. From the CCRB's point of view, the documents that were not included in the release to NICLU included complaint reports. And complaint reports are basically raw data from usually individuals who are arrested who file a complaint. And that was not disclosed to NICLU either. So essentially what you have is just a small piece of the CCRB documents that are going to be released, plus you have no documents so far released from the police department. There are no IAV investigatory documents or none of the documents through the police disciplinary process. So from our point of view, the term, did you say cat in the bag or whatever, for those 81,000 officers on that limited information, I can't dispute that. The short answer is there are many more cats is what you're saying that are still in bags. There are many more cats and there are many more bags. And the documentation that the police department intends to release is very significant. And the idea... Judge Jacobs, does the repeal of 50A by its terms require the disclosure of what you say is at stake? I think that that is a really terrific question. And the answer is absolutely no. And that's why we have this lawsuit. I suppose the legislature could have passed a law that directed municipalities to release police disciplinary records. But they didn't do that. All they did is remove one barrier, obstacle, whatever term you want to use that was protecting disciplinary records. They did not wash away all the other existing protections that frankly existed pre the passing of 50A 44 years ago and still exist today. What are they? So those are privacy protections, safety protections, due process rights, and collective bargaining rights. And those are very significant rights. The collective bargaining rights seem to me rather limited. And I'd like to know where... I mean, I know where due process rights would be located, but where would the privacy protection be located? Is that the civil service? It's in the FOIL statute. The FOIL statute conditions the public's access to documents through various exemptions, including privacy, including safety. The Civil Liberties Union obtained what they have through the Freedom of Information Act. They did. And in our view, it was terribly unfortunate. Put aside whether something that has happened is fortunate or unfortunate. The question I have is whether the New York Civil Liberties Union does not have what you claim would now be disclosed because under the applicable Freedom of Information Act, they were not entitled to get it. It was not produced by CCRB. They got no documents from the police department. So if I'm understanding your question properly, there are two answers. One, no, 50A was not a direction to produce documents. And that is very, very significant. And two, as I was dealing with Judge Lynch, the production to the Civil Liberties Union is a limited production. Let me go back, Mr. Coles, to the FOIL issue. I'm not as familiar with the New York State statute as I am with the federal statute. Under the federal statute, there are various exceptions. I've not seen a case, that doesn't mean there aren't ones, where a person requested documents under the federal law and the government produced them or said it was going to produce them. And then some other individual intervened and was granted standing to say the government shouldn't or doesn't have to or is somehow that the exception to FOIL gives me a right that prevents the government from waiving the exception or from determining that the exception doesn't apply. Now, is there authority in New York State law that some of these exceptions to FOIL grant affirmative substantive rights to individuals who may be mentioned in records to contest the government's decision that the exception doesn't apply or the government's records. And that's exactly what's at issue over here. So the answer is, I understand that. The question is, tell me if there's some case law or something in the statute that says not only that the government need not see my understanding of all these free information provisions is the government has records. If they want to publish them, generally speaking, they can publish them. If they don't want to publish them, the Freedom of Information Act says, well, a court can make you turn it over. And there are certain exceptions where the court can't make you turn it over. And the government sometimes complies with or without a court order. But I've not seen a case that says that a third party mentioned in the records can invoke the exception and prevent the government from disclosing something in response to a FOIA request. And what I ask you quite simply is, do you have a case? Do you have some authority that says that under New York State law, there is such a right? Yes, I believe there is a right under such state law to preclude the release of documents that would violate due process, collective bargaining. Well, due process and collect. You know, we're trying to do this one step at a time. You started, number one was privacy. And when Judge Jacobs asked you, what is the source of the privacy? You said the freedom of information law. Now you're saying not really the freedom of information law. It's really boils down to the due process, collective bargaining, whatever, which create the right that is then somehow baked into FOIA. So we're really talking about collective bargaining and due process, or we're really talking about something in the FOIA statute? Well, there are really two parts to that, because the city is not producing documents only pursuant to FOIA. The city and the police department have said that they are independently going to sort of have a mass data dump of all the documents that we were talking about. Exactly. So why does anything in the freedom of information law, which exists to require the things, but not other things, grant, you know, the freedom of information law is supposed to expand the public's access to documents. And now you're telling me that the fact that something is an exception to the freedom of information law precludes the government's free existing authority to release documents? No, I don't mean to say that. And what I mean to say, and I thought, and if I'm not clear, I should try and clarify that, is that there are independent legal prohibitions to producing documents separate and apart from the repeal of 50A that will affect my client's rights. What are those? Okay, that's the question again. The first is the collective bargaining rights, is each of the unions have in their collective of investigatory reports that result in unsubstantiated or in unfounded or exonerated. Now, when you say it prevents the release, that's your theory. But the language, I think Judge Jacobs was about to ask this question, the language, I think, says that the record will be expunged from the officer's personnel file. It doesn't say anything about what else the city can do or not do with these records. Now, I understand you want to draw an inference, and maybe you want to make that argument explicitly, but am I not right that it is not explicit, let's just say, in the Section 7C, that the city may not release these documents? The documents are removed or expunged, and in our view, if you then make them separately... No, wait, it says, excuse me, am I wrong that what it says is they shall be removed from the officer's personnel file? Yes, that is what it says. It does not use the word expunged? Expunged is in Section 8. I thought you were referring to both. On Section 7... Okay, we can go back to Section 8. I'm trying to do these things one thing at a time and understand the basis for your argument. So, 7C is not the strongest position for you. The stronger position is Section 8? No, I think Section 8, we already went on. Is Section 7C, we should also went on, because Section C deals with removal of investigatory reports from the personnel file, from the that the officers have. And if these reports, and if information from these reports contained in charges and specifications is released to the public, that right will be nullified. Well, I don't understand that either, because I would think that if something is removed from the officer's personnel file, that has significant benefits for the officer, regardless of where else these allegations exist. They're still in the files of the CCRB. They're still wherever they are. The point is that the department can't act on this, that somebody who's looking at this officer's personnel file for purposes of whatever they get looked at for, promotions or whatever, will not have that information as something that they're allowed to act on. That seems significant. But that's different than saying that that record disappears and can't exist in any other place. Well, that is an inference, Your Honor, that you're drawing, an inference that the arbitrator should draw. This was a negotiated provision between the city and the union, where my clients had the ability to remove documents from their files. I believe that there is a compelling case to make to an arbitrator, that if you then make those documents public, you put them in a bargain for... Okay, I hear that. I hear that. Now, with respect to Section 8, you said you already won on that, but I don't think you did in the sense that is relevant to us, because if you did, you wouldn't be here. You're arguing that Section 8 requires this stay because it prevents the city from releasing these documents. I understand that, but what did you mean by you say you already won on? Is the judge enforced Section 8 and says that the stay extends to the... She will send to arbitration the documents covered by Section 8. Okay, so those are not really at issue here. So those are not at issue over here. So, I'm sorry, again, I'm trying to go through this systematically. I understand your argument about Section 7c, and is what you're saying, Section 8 is not really at issue before us because that only applies to certain records, and those already are accepted from the judge's order. That is correct, Your Honor, and I want to add to my answer to 7c. It is already part of the arbitration process. Grievances have been filed by five of my clients. The city has moved in the City Collective Bargaining Office to dispute whether or not Section C can be arbitrated. That is all going to be decided in the labor law time frame, which is in the next 20 to 30 days. So both sides have committed that issue to arbitration. Our concern with what the judge did is she usurped the arbitrator's responsibility to make the type of inferences and decisions and interpretation of words that you and I were just talking about. So, we have a quintessential function that should be subject to arbitration. These provisions were bargain provisions, the intent of the parties, what they expected by them, the meaning of the word removed. Does it mean it's just from the personnel file, or does it mean you lose the benefit of that word if it's not removed from other places, or if it's put on the public? Those are quintessential arbitration type of issues, and all we're saying... So, you're saying that Section 7C would require the CCRB to burn these reports because they need to be removed everywhere if they're removed from the personnel files? Well, first of all, I don't know that the CCRB has them in its own files. Oh, now we're talking about the NYPD records. We're not talking about the CCRB records now. The CCRB records, does the Section 7C apply to the additional CCRB records? It would include the CCRB records as well, because the parties to the collective bargaining contract are the city and the unions. And so, yes, it would apply to the CCRB records. So, when you say that Section 8 requires these records, when removed from the personnel files, not to be removed everywhere, you mean they should be expunged before the CCRB, among other things? Yes. It is one of the synonyms for remove is to eliminate. And how long has the CCRB been maintaining these records without any complaint? Well, these records have been subject to 50A. So, this issue... Right, but no one said that the Section 7C means that the CCRB can't maintain the records. 50A only had to do with their release to the public. Yes, but 7C would be nullified if other city agencies release the documents that are subject to 7C to the public. And that, in the end, we're looking for this matter to be referred to arbitration. And the arbitrator should make the decision on these issues. That is what we're looking for. We've gone way over. There's a lot here, of course, and I think that's why we've gone over. You've reserved three minutes of rebuttal, Mr. Cole. So, let's now hear from Ms. Druecker for five minutes, or maybe more than five minutes, depending on the question. Thank you, Your Honors. Can you hear me? Yes. Good morning. May it please the Court, Elena Druecker, on behalf of the city. Your Honors, this Court should deny an injunction in aid of pending appeal because the unions have failed to show likelihood of success. They failed to show irreparable harm, and the equities don't favor them. I'll go to the merits first. They have absolutely no likelihood of success on the CBA claim. They tried to lower the standard and say that they need not show likelihood of success. We've shown the cases that tell you that that's not true. The standards still apply, and I think we've parsed the language sufficiently to understand it doesn't cover this, but I just want to emphasize that the unions are failing to make any meaningful distinctions between the records here. So, when we talk about the investigative file, right, that involves only cases that end in an exonerated or unfounded investigation, that means that it could never reach any of the documents that the NYPD is currently talking about, because we're talking about the charges and specifications, which are filed after a substantiated finding. The unions can't dispute that that's not covered by this provision, by its plain language. You can't stretch to charges and specifications, which are the next step in the disciplinary process after the investigation. Ms. Druecker, can I try to clarify this? The distinction that you're making, I take it, is that with respect to the internal records that are proposed to be released, these are not about unsubstantiated claims. These are about claims, I take it, they're not necessarily just ones that are substantiated by the CCRB, right? I mean, if the CCRB finds a claim substantiated, I was not aware, tell me if I'm wrong, that the police department automatically files a charge then? Let me step back, because I think part of the confusion is a lack of understanding, or sort of an amalgam of all these disciplinary records, like it's one big thing. The process is either IAB or CCRB, sometimes at the precinct level, an investigation is done into a complaint, and that investigation can end in one of four ways as relevant here. It can be unfounded, exonerated, unsubstantiated, or substantiated. The Section 7C provision, which is absolutely right, it only covers personnel action, but putting all of that aside and assuming it means even more than that, it only kicks, it's reverting to exonerated and unfounded, not substantiated or unsubstantiated claims. It says those two records won't provide a basis for personnel action effectively. You know that because the actor who is required to act under that provision is the chief of personnel. So, of course, the chief of personnel of NYPD cannot reach into CCRB's records and remove records from an independent agency over which it has no control. But also, only talking about these exonerated and unsubstantiated claims, those will stop there. After that, a substantiated allegation then goes to the commissioner who makes a determination, him or his designee, makes a determination about whether or not then to proceed through a formal disciplinary process. During the investigative phase, and this bears a lot of relevance to their due process claim, they're given notice and an opportunity to be heard. So, even before the investigation ends, there's something called the GO-15 hearing if it's done within the NYPD, or there's something, there's a hearing under the CCRB's rules, an interview with counsel present. So, they're given an opportunity then, and then if it is substantiated, only at that point is it referred to the commissioner to then proceed with formal disciplinary charges. Who then has the discretion to decide one way or another to serve and file charges and specifications. So, the NYPD records we're talking about here follow this investigative process and only arise in some cases when you've got a substantiated finding. So, this provision just has no application to this case. That's my perhaps strongest point is it was not so much that we should decide that it's likely that the collective bargaining provision protects these records, but that we should defer to the arbitrator. And I'm wondering whether what your position is on that. Are you asking us to assess the likelihood that the arbitration will be successful? Or are you saying that we should just make an independent decision as to what the, and maybe these wind up being the same thing, I don't know, an independent decision that the collective bargaining agreement does not cover this situation? So, to enter an injunction in aid of arbitration, the unions have to, at a minimum, even they say they need to show that there's some plausibility that this language will apply to these records. I mean, what I'm saying here is that there is no overlap at all. I mean, these are two separate Venn diagrams. So, this provision, even if you gave them the benefit of every doubt and you bent over backwards and read this provision in a way that language can't even really support, you still don't get the protection that they're asking for, an injunction in aid of arbitration that would reach charges. Excuse me, why wouldn't we expect an arbitrator to decide the scope of the controversies that are presented for arbitration? And why is it impossible that an arbitrator could decide that the things we're arguing about now are within the scope of an arbitration provision of a labor contract? Well, Your Honor, if you read the actual I'm saying that the category of documents that the unions are asking you to prevent the city from releasing have absolutely no connection at all to the provision. When you say the provision, you're talking about a subsection of the contract. But why can't an arbitrator consider that these documents are within the scope of the contractual understanding? Yeah, I agree. You may well say it would be wrong. I'm not sure it would be right. But arbitrators often can do these things. Well, let's think about it this way. There was another provision of the CBA, Section 8, which had a sliver of ambiguity. And for that small category of documents, the district court said, let's, out of an abundance of caution, not allow for the release of those records and allow those claims to go to arbitration. And that is a small category of documents that are potentially actually covered by that provision. But this provision speaks about unfounded or exonerated records to be removed from the investigative record report, right? The investigative report cannot be the proceedings that from, how about just more simply, the exonerated and unfounded. Those are the only two categories. So it follows that the substantiated and unsubstantiated, which there's no possible reading that this covers it. Those have to be, the injunction can't reach those records, correct? Are you saying that something that is unsubstantiated is fundamentally different from something that is unfounded? Yes. There's four, they're defined terms. They're in the statutes. They're in substantiated, unsubstantiated, exonerated, or unfounded. Do those categories and what you're talking about now bear upon whether a stay should be granted? Yes. So if I don't understand it, then what should I do? So if you go to our brief, I think it's on the third page, I have a citation to each of the provisions that define those four terms under the statute. You can see that this section seven only applies to exonerated and unfounded investigations. And you're saying that it's inconceivable that an arbitrator would say that a protection based on what is against disclosure, what is unfounded could not possibly protect what is unsubstantiated. That's right, because they're separate defined terms. So you have exonerated, unfounded, unsubstantiated, and substantiated. It is only the substantiated investigation that will then move into the disciplinary process that will allow for the charges and specifications and quasi-judicial proceedings, the disciplinary process, right? So it's only when you substantiate the complaint, oh, this was a use of force, it was improper, that's substantiated, then charges and specifications are filed. So NYPD will release these charges and specifications. Those will only follow substantiated allegations, you see? So they'll never be able to reach investigative files relating to exonerated or unfounded. So this provision, the unions, what they do is they say they have a right of confidentiality, and it's a very amalgamous undefined term. But if you look at the records, there's no relationship between the records that the NYPD seeks to release here and Section 7 protections. Even if they were outside of the personnel file, which they're not, they still would never reach the records we're actually proposing to release, which are substantiated findings that then the commissioner decides to act on and file charges on. And then there's a final judicial or quasi-judicial report and finding of guilty or not guilty. And that not guilty finding is the sort of published opinion that the NYPD seeks to produce to the public. So these final decisions of guilty and not guilty made by a hearing officer are so far down the process after they received an incredible amount of due process and will never, ever follow an exonerated or a unfounded allegation. And so Section 7 just doesn't apply, even giving them the benefit of every doubt. Ms. Drucker, maybe the question is, why aren't you making these arguments to an arbitrator? And what's the harm if we let the arbitrator make these decisions? It seems like you're saying that we should be deciding which arguments are good enough to get to the arbitrator. No, Your Honor, the question is about, we're here because they are seeking an injunction, an aid of arbitration. So would they be allowed to enjoin the city from speaking at all about any topic about any police officer or any school teacher from now until the arbitration is finished? The scope of the injunction, to the extent that one ought to be entered, has to have a rational relationship to the provisions in the CBA. And here- Ms. Drucker, what you're saying, let me see if I have this correct. What you're saying is, yes, this goes before the arbitrator, and yes, you are going to make these arguments before the arbitrator. But what they are asking for is not simply a reference to arbitration. I take it, you've already agreed to arbitrate. Is that right? No, Your Honor. No, you haven't. So first of all, they only, from my understanding, only three of the five unions have submitted, have started the process for arbitration. As of August 3rd and 4th, three of the five unions filed. So the other two- Has the time run? Has the time run? Three of the five have started it. Could the other two start it? They could file grievances. I don't believe that they're time barred or any way. I mean, I don't know whether that would be an argument within arbitration. Well, but again, just to focus on what the issue before us is, what you are saying that the question is, they are not asking that they are asking for an injunction in aid of arbitration and asking us to enjoin the city from acting pending the outcome of the arbitration. Is that, that's the issue, right? Just please, yes or no, is that your contention that that's the issue before us? Yes, but- Okay. And then your next proposition is that there is a category of question that is, and whether this falls into it or not, I guess, would be the next problem. There is a category of claim that is so far-fetched that it would not support a showing that the city should be enjoined from acting pending, that a court should undertake its powers to enjoin an action from being taken pending the arbitration. Is that it? Yes, but the caveat that I believe that between those two steps, the court ought to look at the plain language of the CBA and see, I mean- Well, that's how we decide, excuse me, Ms. Drucker, that's how we decide whether this would fall into the category of something that is so far-fetched as we'd look at the language and all other interpretive aids. But there's a prior question as to whether there is such a category under law as something that we can say, this isn't in the ballpark for arbitration. If there's no such category, if anytime somebody says arbitration, we should issue an injunction in aid of arbitration, then we never reach those questions. You're saying there is such a category and this falls into it because if we read the provisions, we will come out where you come out. Yes, Your Honor. It's as simple as there are three steps to the argument. Those are the three steps. Yes, Your Honor. Absolutely. So the three steps are that if you read the Section 7 language, the chief of personnel, the personnel folder language makes it clear it's an employment-based right only. Even putting that aside, the records that are covered would never reach the records that the NYPD or the CCRB are proposing releasing because the language only reaches a small subset of records which are not the records at issue here. Does that answer the question? I see I'm over my time. May I address the other claim that they've... I mean, I think that the unions have largely conceded an argument here that the FOIL doesn't create an independent cause of exemptions. Those are exemptions that are discretionary and they belong to the city. And even putting all of that aside, all the city would have to supply would be a rational basis. And the repeal of 50A and this conversation about police reform is more than a rational basis to support any potential shift in policy that they're pointing to. And I also would like to very briefly address the due process claim. They claim that another right is being created by the due process clause to withhold these records. And that too is entirely incorrect. The stigma plus case law from this court says that they need more than... they don't have the stigma because there's no individual claim of falsity. This is all accurate reporting of actual complaints. There's also no reputational injury, nothing more than a reputational injury, which is all you ever... which is the plus element that they can't satisfy. And they misquote case law. They cite to the stigma discussion for the plus, but the plus is what requires something more. Like in all of those cases they cite... I think that's in your brief and I'm just concerned about time where I think we're 11 minutes over with you already. Of course you're out of air. So let's reserve with you and we'll pick up on Ms. Wright. Thank you, Your Honor. Thank you, Your Honor. And good morning. May it please the court. I'm Tiffany Wright and I requested stay because they have failed to prove the existence of any legally cognizable harm that will qualify as an irreparable injury. And I was planning to use my time to discuss irreparable injury and the public interest, but I just want to pick up on the questioning by Judge Lynch and Judge Jacobs with respect to the CBA. The first thing that I wanted to point out is that this court has an obligation under SG Cohen to evaluate the likelihood of success on the merits at authority to, of course, engage with the merits in order to determine the likelihood of success. And there is one reason under black letter state law why the unions could never succeed on their claim on Section 7C of their collective bargaining agreement. And that is that the government agency simply lack authority to negotiate away the public's right to know under FOIL. That was said in cases like La Rocca, the one that's most on point is city of Newark versus New York, where it was decided that an arbitrator, that order from an arbitrator purporting to limit disclosure under FOIL had no operation under state law. And so that that provision simply cannot mean what the unions say that it means. And so that is why they cannot succeed on the likelihood on the merits of that claim. And with that, Your Honor, I'd like to very briefly with the remainder of my time address irreparable harm and a little bit on public interest. With respect to irreparable harm, the unions allege three such harms, reputation, safety, and CBA, which we've just covered. Beginning with reputation, I think it's important to know that this court has decided in Stewart versus INS that the sort of reputational harm that the officers are claiming here simply cannot, does not qualify as irreparable injury. And specifically in Stewart, the court was dealing with a claim where a plaintiff said, I will be degraded based on these allegations in this, my standing among my peers and my community will be degraded. I will be humiliated. I will not be able to provide for my family. And this court unequivocally said that does not constitute irreparable harm for the purposes of injunctive relief. So that would govern here. And so that is not a harm. Let me ask you this. As I understand it, one of the grounds for irreparable harm is that people would be able to look up and find unsubstantiated and groundless charges and target people and look up their addresses on the internet, threaten them in their homes, threaten them and their families and their children at school. Wouldn't that be irreparable harm? Your honor, that would be irreparable harm, but the unions bear the burden before this court of establishing that that harm is not just possible, but under winter, we know that they have to establish that it is likely. And on this record, as the district court held, they simply have felt to meet that burden. So for example, your honor, the unions do point to a generalized harm that is possible to police officers. And I want to be clear, no one here wants to see any officers come to harm. But what the unions have failed to do is create a causal link between the harm and the issue here, which is released under FOIL. What is in the record is 12 jurisdictions that have materially identical disclosure rules, not a single documented case of a threat to an I thought in the papers, it said that, that New York was an outlier in, in, in having any, in having any restriction on, on, on disclosure. That's correct, your honor, until the repeal of Section 58, New York was an outlier in the level of secrecy it maintained around these sorts of records. But what I'm using these other... But you're saying, you're saying that, that, that there are only, there are only 12 states that permit broad disclosure of law enforcement records, regardless of whether the allegations are substantiated. That would leave us, what, 38 that don't. When I say 12 states, your honor, I should be clear, that is based on looking at sort of the statutory language and the 58 repeal and looking at which states are similar. But among states and sort of what is, so for example, Chicago, the statutory language is not similar in their FOIL laws, but they have allowed a database that is very similar to what New York would do here. Certainly New York was an outlier in the amount of secrecy. But when I say the 12 states, I'm just basing that on a comparison of the statutory language. And so in those 12 states, and what I'm trying to use that to establish, your honor, is that they have to prove that this harm is likely. There are 12 jurisdictions. And one I would want to point out is Chicago, which the district court said was a fair comparator to New York. 23,000 or more records online, searchable, not a single case of a threat or a harm. And so on this record, it's not only that the unions have failed to meet their burden, but the record shows that it is unlikely, which renders their requested stay impossible because they have not shown irreparable injury as the Supreme Court defined it in winter. Ms. Wright, may I ask you, you know, we're only a motions panel, despite the amount of time that we have devoted to this issue, because it is a significant issue. We are not being asked to decide, I think, whether the unions are entitled to an injunction in aid of arbitration. I take it that such an because the arbitration gets started, the arbitration takes as long as it takes. Unquestionably, there would be litigation thereafter about whether the arbitrator was right or wrong. And life would go on through endless problems. But we're only being asked whether there should be a stay pending a determination by a merits panel of all of the issues that we've been talking about today. And I understand we're considering the likelihood of success on the merits and the burden on the other side is to show a they are likely to succeed and be that there's irreparable injury. But I guess I'm a little concerned about just in balancing the all the interests at stake here. What is the urgency on your side that these records be released tomorrow, rather than in what is probably a couple of months, if you're right, on the merits of the injunction of the long term stay on the stay pending appeal when the merits panel decides this. So why does this have to happen right now? Your Honor, I'd like to preface this by saying that the legislative will, the power of that here makes it somewhat urgent, because the legislature spoke decisively, the governor has signed it and these records presumptively public immediately. And as to what the urgency is, Your Honor, I think the best way to answer that question is to give a couple of concrete examples. Oh, excuse me, when you say presumptively public, again, Mr. Cole said that the repeal of 51a takes away a barrier, but does not instruct the city what to do with respect to FOIL requests or with respect to records. The city does what it does, if you think they have an obligation under FOIL to release it, you ask them, they do, we go through the process. Are you saying now that the repeal of 51a does do more than lower a roadblock, but in fact, makes a presumption that the city will release these records? That is correct, Your Honor, the New York Court of that when something is subject to FOIL disclosure, it means that that record is presumptively public. And I'm more or less quoting here imposes a duty to disclose irrespective of privacy interests and other attendant burdens. And so yes, when something is covered by FOIL, it is presumptively public, and agency does not have to wait for a request in order to release it. So agencies that do that are not in any way acting outside of their authority, and the removal of 51a made these records presumptively public. Excuse me, I'm hearing you say that the city and the CCRB is required now, as a result of the repeal of 51a, is required promptly to make the disclosure of all of these documents. And I'm not sure I know how that works. Your Honor, I'm simply saying that it creates a presumption that these records will be public. Now, of course, the agencies have a duty to evaluate the various exceptions that might apply to those records, but those exemptions are permissive. And so there's no requirement that they apply, but an agency could, for example, decide that release in a specific case implicates one of those exemptions. And so I'm just, the presumption- But Ms. Wright, the argument you're really making is that under FOIL, there is an obligation to release these records, and that the repeal of 50a takes away a roadblock to that, not that the repeal of 50a in itself creates something that didn't exist before. The affirmative obligation resides in FOIL. That's correct, Your Honor. And I'd just like to go back to your question, Judge Lynch, about what the urgency is for the public to having these documents now or these records now. And I think the best way to come at that question is by making things a little bit more concrete. And so I'd like to point to two examples that are in the record. And so the first you'll find in the declaration of Ms. Andrea Ritchie, which is attached to our brief, she talks about the second most common form of police abuse, which happens, and estimated every five days, that is which we know, again, every five days, approximately, that victim has a choice. The choice is whether to come forward and demand accountability. And part of that calculus is, am I alone? And so if that victim can look and see that there have been others who have made this allegation, it makes it more likely that accountability will happen and transparency will happen because she will feel comfortable coming forward. Second- Is that every five days something that's substantiated? Or is that an allegations occur every five days? An allegation, Your Honor. But what we know about sexual misconduct and sexual assault is that the under-reporting rate is stark. That is under-reported, Your Honor. The second example that I would like to point to is when we have instances of excessive force in the community. So one that will probably strike home for most Americans is the case of Eric Garner. When that happened, the community had no way of knowing whether the officer involved, Daniel Pantaleo, was, as the union president said, someone with a perfect record, a model police officer, or whether, as we now know, because records have been released and transparency is in place, this was someone with a serious record of misconduct. And in the immediate aftermath of these instances, there is a need for the public to know so that they can demand accountability and really have informed conversations about what the priors are for everyone involved. On the other hand, counsel, this information has been unavailable since time immemorial. And in 38 states, it's still unavailable. I hear your arguments. And I'm not going to go into the details of this. I'm going to focus on the public servants and their possible misconduct. But the question you were asked was, why is this urgent? Your Honor, I think that those examples do demonstrate why it's urgent because police officers are in our community. This is ongoing. It's happening all the time. I mean, the reason why I point it to every five days is because it shows how often. And so, yes, it's true that they held secret for many, many years. But the legislature has clearly spoken to this point. And remember, Your Honor, this is a balancing. And so, in the absence of irreparable harm, likelihood of success, there's simply nothing on this record to overcome that public interest in those policy arguments. And so, I'm seeing that there may not be any further questions. And with that, Your Honor, I would just ask that you would deny the request to say thank you, Your Honor, for your attention. Thank you. We'll now hear from Mr. Coles for three minutes of rebuttal. Mr. Coles? Thank you, Your Honors. I first want to rebut the issue about 7C. The scope of 7C is actually something that has to be interpreted by the arbitrator. It's up to the arbitrator to interpret terms of the contract and the intent of the parties. The scope of what's in arbitration is set forth at page seven in our brief. And the type of definitions that the city talked about actually are not in any way conclusive, nor does the police department in every case adopt those definitions. With regard to investigative files, it's impossible to do a charge and specification without including information in investigative files in those charges and specifications. It's a legitimate question for the arbitrator of the prohibition on being able to remove investigative files. I also think the fact that the chief of personnel removes the investigative file is completely meaningless in terms of supporting the city agreement, because this is a contract between the city and the unions. And once that file is removed, I believe an arbitrator can explore whether or not the intent of the parties was that it was removed for all purposes, and it would be rendered null and void if it was made public. I also want to respond to what Ms. Wright just said about there's no threats to safety out there. I think there's nothing that ties a threat to safety to the release of this information. I mean, we've seen police officers assassinated. I mean, there's a serious danger to being a police officer. No one says anything to the contrary of that. But the recent incidents we've seen aren't people who had some charge against them. They were just somebody angry attacking a random police officer. The point I wanted to make is at the hearing of the bill, an advocate got up and made a threat, said once I get the names of the cops, I'll be able to get their addresses, get the addresses of their families, and I'll find them all on Google. If you look at the amicus briefs, there's something going on in the country right now. People are showing up at cops' homes. They're shining lights into cops. There are examples in the press of people shooting into real time. My view is you need to be cautious about the risk to safety. We're in a very turbulent time, and I don't see a stay for a short period of time to protect throwing more gas on the fire, which is what the city is suggesting and what Ms. Wright was suggesting makes any sense at all until we have a fair ability to analyze these issues at appeal. Mr. Cole, can I ask a question? If we were to decline to grant the stay here, what would be left to litigate by the time the Merits Panel got the case? It would make, as I said at the beginning, the appeal fundamentally hollow. It would take away our collective bargaining rights. It would take away our due process rights. On that, I thought the statement that the city made that there is some due process hearing that takes place before a charge and specification, that is simply untrue. There's nothing that protects an officer's right before a charge and specification is issued. If you don't extend the stay, all these rights that we believe exist independent of 50A that are important to our officers and to their families essentially are going to be extinguished. That's why I think Judge Chin entered the stay on our papers and why I think you should do it here. We're only looking for a stay pending appeal. We're entitled to a meaningful, careful review of these significant issues in a turbulent time in the city and involving matters to some degree with the repeal of 50A are matters of first impression. I would add what Judge Jacobs said, these disciplinary records have been confidential by law for 44 years. Another couple of weeks is not going to make a big difference to the city. It is going to make a huge difference to my 65,000 law enforcement officers. All right. Why don't we leave it there? This is about the longest motion argument that I can recall, but I haven't been doing this that long. Thank you all. Very well argued. We will reserve decisions.